891 So.2d 1219 (2005)
William A. LESTER, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-1319.
District Court of Appeal of Florida, Second District.
February 4, 2005.
James Marion Moorman, Public Defender, and Allyn M. Giambalvo, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Katherine Coombs Cline, Assistant Attorney General, Tampa, for Appellee.
SILBERMAN, Judge.
William A. Lester appeals his conviction and sentence for possession of cocaine and argues the trial court erred in denying his motion for judgment of acquittal. We agree and reverse.
The essential facts are undisputed. On March 18, 2003, Lester was driving a car with Vanessa Schenkel in the front passenger seat. Lester drove to a location in St. Petersburg that is well-known for drug activity. Unbeknownst to Lester and Schenkel, a police officer was at that location watching a man sell narcotics to people in passing cars. The officer observed Lester's car drive up and saw an exchange between the front seat passenger and the seller. The seller had a small object in his hand, he gave it to the passenger, and the passenger gave currency to the seller. The officer did not see any activity by the driver.
The officer radioed other officers, who stopped Lester's car within three blocks of *1220 the location of the exchange. One of the officers went to the passenger side of the car, where Schenkel was sitting, and saw three small bulges in one of her socks. The officer testified that based on his years of experience, he knew the bulges were three pieces of crack cocaine. He asked permission to search Schenkel, and she agreed. He went to her sock and removed the crack. Schenkel handed to the officer two crack pipes that she had concealed in her pants.
With Lester's consent, one of the officers searched Lester and his car. The officer did not find any drugs or other contraband, but he found in the glove compartment a bag containing a new Brillo pad. Lester admitted that he had purchased the Brillo pad. The officer testified that Brillo is often used in crack pipes as a filter and that both pipes seized from Schenkel contained pieces of Brillo. Although Lester initially denied having any knowledge of Schenkel's intent to purchase drugs or that the above transaction involved the purchase of drugs, he ultimately admitted that he had smoked crack the day before, that Schenkel had just received a check and was going to buy crack cocaine, and that he intended to partake and smoke the cocaine.
Our review of the trial court's denial of Lester's motion for judgment of acquittal is de novo. Pagan v. State, 830 So.2d 792, 803 (Fla.2002). As we have previously stated:
A motion for judgment of acquittal is designed to challenge the legal sufficiency of the evidence. If the State presents competent evidence to establish each element of the crime, a motion for judgment of acquittal should be denied. A trial court should not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt.
State v. Odom, 862 So.2d 56, 59 (Fla. 2d DCA 2003) (citations omitted).
Because there was no evidence of Lester's actual possession of the crack cocaine, the State had to prove constructive possession in order to sustain a conviction for possession of the cocaine. See Isaac v. State, 730 So.2d 757, 758 (Fla. 2d DCA 1999). To prove constructive possession, the State had to prove that Lester had "dominion and control over the cocaine, was aware of its presence, and knew of its illicit nature." Id.; see also Odom, 862 So.2d at 58-59.
Our decision in State v. Snyder, 635 So.2d 1057 (Fla. 2d DCA 1994), is instructive regarding cases involving constructive possession. There, an information charged Snyder with possession of methamphetamine. Snyder filed a motion to dismiss, alleging that he met a friend, Parker, for lunch and that Parker was under investigation for receiving drugs at his post office box. After lunch, Parker drove with Snyder to Parker's post office box. Parker retrieved a package while Snyder waited in the car. Snyder admitted that he knew Parker was expecting the arrival of contraband. As Parker was driving Snyder back to his car, he offered to let Snyder try some of the methamphetamine. Parker poured two lines of the drug onto a cassette case and placed the rest under his seat. Before either Snyder or Parker partook of the drug, the police arrived and arrested them. Id. at 1057-58.
The trial court dismissed the information because of the absence of evidence of Snyder's dominion and control over the drug. Id. at 1058. On appeal, this court concluded that the foregoing facts were insufficient to support a conviction against Snyder for constructive possession of methamphetamine. The court reasoned that although Parker offered to let Snyder try some of the drug, there was no *1221 evidence from which to infer that Snyder could compel Parker to fulfill his promise. The court added that "[t]he ability to reduce a controlled substance to one's actual possession was the key to the definition of constructive possession." Id. The court concluded as follows: "The interpretation of the facts in the light most favorable to the state establishes no proprietary right in Snyder nor any immediate right to reduce the methamphetamine to his possession because Parker had not yet relinquished control over the line he was organizing for their use." Id. (citations omitted).
Here, the evidence was sufficient to establish that Lester was aware of the presence of the crack and its illicit nature and that he intended to partake in it. However, the evidence did not establish Lester's dominion and control over the drug. No proof was presented that he had or could take actual possession of the crack or that he could compel Schenkel to share the cocaine with him. Instead, the evidence established the following: Schenkel purchased the crack cocaine with her money; she was a passenger in Lester's car, and the crack was hidden in her sock; and Lester intended to use the crack, but the police stopped the car before he ever acquired possession or control over the crack.
Because the State failed to establish Lester's dominion and control over the cocaine, and thus failed to establish his constructive possession, we reverse and remand with instructions that Lester be discharged. Reversed and remanded with instructions.
NORTHCUTT and CANADY, JJ., Concur.